UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MATTHEW W. MITCHELL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 14-301-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| OFFICER J. MIKE, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendants City of Paris, Officer Abdullah Bholat, Officer Matt Reed, and Officer Jason Mike have moved for partial summary judgment in their favor. [Record No. 39] Specifically, they assert that: (i) the Eighth Amendment claim does not pertain to a pretrial detainee; (ii) the Court lacks jurisdiction over Plaintiff Lisa Fagaly's claims; (iii) the plaintiffs fail to satisfy the standard of proof for negligent infliction of emotional distress; (iv) the outrage claim is subsumed by the other tort claims; (v) the plaintiffs have failed to offer evidence for the failure-to-train claim; and (vi) punitive damages are not appropriate as they pertain to the City of Paris.

Plaintiffs Matthew W. Mitchell and Lisa Fagaly failed to file a timely response to the defendants' motion. However, the Court has considered all issues on the merits. For the reasons outlined below, the Court will grant summary judgment in favor of the defendants regarding the Eighth Amendment claim (Count II), the negligent infliction of emotional distress claims (part of Count IV), the outrage claims (Count V), the failure-to-train claim (Count VI), and the request for punitive damages from the City of Paris (Count VII, as to

Defendant City of Paris only). However, the defendants' motion will be denied with respect to the remaining claims. The remaining claims are: the search and seizure claim (Count I), Mitchell's claims of assault and battery (Count III), Mitchell's negligence and vicarious liability claims (part of Count IV), and Mitchell's request for punitive damages against the officers (Count VII, as the request pertains to the officers).

**I.**

At 2:40 a.m. on July 24, 2013, Officers Mike, Bholat, and Reed arrived at Plaintiff Lisa Fagaly's residence in response to a neighbor's complaint. [Record Nos. 39-1; 40, "Deposition Transcript of Lisa Fagaly," p. 71] Lisa Fagaly, her husband Byron Fagaly, and her son Matthew Mitchell had been drinking beer on the porch of the residence since roughly 6:00 p.m.[1] [Record No. 40, p. 69] The neighbor had called the police when a fight ensued between Byron Fagaly and Mitchell (his stepson), and Byron began choking Mitchell. [*Id.*, pp. 70–71] Lisa Fagaly was screaming and kicking Byron in an effort to stop the assault. [*Id.*, p. 71]

The police officers separated Byron from Mitchell, took him to the bottom of the porch steps, and began questioning him. [*Id.*, p. 73] At this point, Lisa Fagaly's and Mitchell's accounts differ. Lisa Fagaly claims that she took Mitchell inside to clean his wounds. At that time, she states that an officer came inside to remove Mitchell. [*Id.*, p. 74] Mitchell gave certain items to Lisa for safe-keeping. [*Id.*, p. 76] Next, the officers handcuffed Mitchell while on the porch. [*Id.*] Subsequently, Lisa heard a commotion and

---

1   Mitchell's girlfriend Marcia Patton was also present, but Mitchell claims that she was not drinking. [Record No. 41, p. 104]

came outside where she claims officers were striking Mitchell with a nightstick, mashing his face into the ground with a boot, and tasing him. [*Id.*, pp. 81−89]

According to Mitchell, upon being separated from Byron Fagaly, officers handcuffed Mitchell and moved him to a neighbors' rock wall. [Record No. 41, "Deposition Transcript of Matthew Mitchell," p. 84] While the officers were speaking with him, Byron yelled an insult at Mitchell, and Mitchell rose from the wall. [*Id.*, p. 91] At that point, the officers allegedly tackled him, hit him with a nightstick, tased him five times, and dragged him to the police cruiser. [*Id.*, pp. 91, 94, 101−102] Eventually, Mitchell was charged with alcohol intoxication, disorderly conduct, and resisting arrest. [Record No. 39-3]

At some point during the scuffle, Lisa yelled at the officers, causing one of the officers to approached her on the porch. [Record No. 40, p. 94−96] Lisa claims that she retreated inside the home (allegedly out of fear of being beaten) but the officer followed and removed her from the residence. [*Id.*] The officer informed Lisa Fagaly that she was under arrest for alcohol intoxication and disorderly conduct. [*Id.*, p. 97] Subsequently, she claims that the officer grabbed her arm, jerked her around, tightly handcuffed her, and escorted her to the police cruiser. [*Id.*, pp. 97−100] Lisa's daughter Rachel and granddaughter Audrey arrived at some point during the altercation and witnessed Lisa's arrest. [*Id.*, p. 14, 100−102] However, they did not witness the officers allegedly beating Mitchell, but allegedly witnessed her placed in the police vehicle. [Record No. 41, p. 103] Byron Fagaly was also arrested for alcohol intoxication and disorderly conduct. [Record No. 39-2]

Mitchell later pleaded guilty to all charges. [Record No. 41, p. 65] Lisa pleaded guilty to one of two charges in exchange for dismissal of the other. [Record No. 40, p. 36] And Byron pleaded guilty to alcohol intoxication. [Record No. 39-4, p. 5]

On July 24, 2014, Matthew Mitchell and Lisa Fagaly filed suit against the defendants, asserting several claims regarding the officers' behavior the night of their arrests. [Record No. 1] Individually, Mitchell alleges the use of excessive force under the Fourth Amendment and 42 U.S.C. § 1983 (Count I), cruel and unusual punishment under the Eighth Amendment (Count II), assault and battery (Count III), negligence and vicarious liability (part of Count IV), and the City of Paris' failure-to-train (Count VI). [*Id.*, pp. 5−7] Jointly, he and Lisa Fagaly allege negligent infliction of emotional distress ("NIED," part of Count IV) and outrage (Count V). [*Id.*, p. 7] They also request punitive damages (Count VII). [*Id.*]

After completing discovery, the defendants moved for partial summary judgment on several grounds. First, they contend that the Eighth Amendment claim is inapplicable to a pretrial detainee, like Mitchell. [Record No. 39, p. 6] Second, they claim that the Court lacks jurisdiction over Lisa Fagaly's state law claims. [*Id.*, p. 7] Third, they assert that the plantiffs' NIED claims fail because the plaintiffs have not met Kentucky's heightened standard of proof. [*Id.*, pp. 7−8] Next, the defendants allege that the outrage/intentional infliction of emotional distress ("IIED") claims cannot stand where the assault and battery claim allows for the recovery of damages for emotional distress. [*Id.*, p. 9] Further, they claim that the City of Paris cannot be held liable for constitutional violations on a failure-to-train theory because the plaintiffs have not presented evidence regarding the nature of the

City's training. [*Id.*, p. 10] Finally, they argue that the City cannot be held liable for punitive damages because the plaintiffs have not satisfied Kentucky Revised Statutes ("K.R.S.") § 411.184(3). [*Id.*, p. 11−12] Although the plaintiffs have not filed a timely response to the defendants' motion for partial summary judgment, the Court has reviewed the arguments on the merits.

## II.

Summary judgment is appropriate when there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

### A.    The Eighth Amendment Claim (Count II)

Mitchell asserts that the officers' actions on the night of his arrest constitute cruel and unusual punishment, depriving him of rights secured by the Eighth Amendment to the United States Constitution. U.S. CONST. amend. VIII. [Record No. 1, p. 6] However, the

defendants claim that pretrial detainees, such as Mitchell, have no rights under the Eighth Amendment.  [Record No. 39, p. 6]

The Eighth Amendment applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."  *Ingraham v. Wright*, 430 U.S. 651, 671, n. 40 (1977).  Where the officers' purpose is to "render solicited aid in an emergency rather than to enforce the law, punish, deter, or incarcerate," the Eighth Amendment does not apply.  *Peete v. Metro. Gov't of Nashville and Davidson Cnty.*, 486 F.3d 217, 221 (6th Cir. 2007) (holding that Fourth Amendment, rather than Eighth Amendment, applied where plaintiff alleged that officers were deliberately indifferent to his needs in response to a 911 call).  As a result, pretrial detainee claims "sound in the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment."  *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

Here, the alleged "repeated shooting of Mitchell with a taser gun in the back while he was handcuffed" did not occur after a criminal prosecution or a formal adjudication of guilt.  [Record No. 1, p. 5]  Police were merely rendering solicited aid when the alleged events took place.  Therefore, Mitchell was, at most, a pretrial detainee, indicating that the Eighth Amendment's proscription does not apply to his situation.  *Villegas*, 709 F.3d at 568.  Consequently, summary judgment is proper for the defendants on Count II of the Complaint.

    **B.**    **Lisa Fagaly's State Law Claims (Counts IV and V with Respect to Fagaly)**

Lisa Fagaly alleges state law claims of NIED and IIED against the defendants, premised on the fact that she witnessed the officers beating and tasing her son.  [Record No.

1, p. 6] The defendants contend that the Court has no jurisdiction over her claims because complete diversity is lacking and because Lisa does not assert any federal claims that would provide the basis for supplemental jurisdiction over the state law claims that she has alleged. [Record No. 39, p. 7]

For federal-question jurisdiction, a plaintiff must assert a cause of action under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. For diversity jurisdiction, the plaintiff must allege complete diversity and that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. Additionally, where the Court has original jurisdiction over a civil action, it has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Because the plaintiffs have not alleged that diversity jurisdiction exists for Lisa's claims, the Court will focus on the applicability of supplemental jurisdiction. [Record No. 1, p. 3]

"Section 1367(a) is a broad grant of supplemental jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (holding that district court had jurisdiction over claims that did not satisfy the amount-in-controversy requirement because they were part of the same civil action as claims that satisfied diversity jurisdiction). Thus, supplemental jurisdiction "includes claims asserted by parties other than the ones who brought the claims over which original jurisdiction could be exercised." *Williamson v. Recovery Ltd. P'ship*, No. C2-06-292, 2009 WL 649841, *5 (S.D. Ohio March 11, 2009) (reasoning that jurisdiction existed over one group of plaintiffs' accounting claims because

another group of plaintiffs' claims arose under federal maritime law). *See also*, *McKinney v. Lexington-Fayette Urban Cnty. Gov't*, No. 5:12-CV-360-KKC, 2015 WL 4042157, *11 (E.D. Ky. July 1, 2015) (stating that the Court had jurisdiction over claims of negligence, IIED, wrongful death, and loss of consortium because they formed part of one controversy with the decedent/co-plaintiff's § 1983 claim).

In their motion, the defendants failed to address the meaning of "case or controversy" under 28 U.S.C. § 1367(a) or point to authority that the Court does not have jurisdiction over a party's claims when they are premised on her co-plaintiff's claims that establish original jurisdiction. Plaintiff Mitchell has a claim of excessive force under the Fourth Amendment and 42 U.S.C. § 1983; thus, he has established federal-question jurisdiction over his primary claim. [Record No. 1, p. 5] Lisa Fagaly's claims of NIED and IIED are based on the same underlying facts as the primary claim—the officers' alleged beating and tasing of Mitchell, which resulted in emotional distress for Lisa. [*See id.*, p. 6.] As a result, Lisa's state law claims form one case or controversy with Mitchell's federal claim, indicating that the Court has supplemental jurisdiction over her claims. Therefore, the Court will deny the defendants' request for summary judgment on Lisa's claims on this ground.

### C. The Plaintiffs' NIED Claims (Part of Count IV)

Both plaintiffs assert claims of negligent infliction of emotional distress in Count IV. [Record No. 1, p. 6] The defendants contend that this claim fails because neither plaintiff has alleged that he or she "sustained a serious or severe emotional injury as a result of [his or her] interactions with the police on July 24, 2013." [Record No. 39, p. 8] Further, the defendants argue that even if the plaintiffs have alleged serious emotional injuries, they have

failed to present expert medical or scientific evidence of those injuries, as required by Kentucky law. [*Id.*, pp. 7–8]

To establish a claim of NIED, a plaintiff must present evidence of common law negligence, in addition to evidence of a "severe" or "serious" emotional injury. *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012). A serious or severe emotional injury "occurs where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case." *Id.* Consequently, "[d]istress that does not significantly affect the plaintiff's everyday life or require significant treatment will not suffice." *Id.* at 18. As a part of these cases, a plaintiff "must present expert medical or scientific proof to support the claimed injury or impairment." *Id.*; *see also MacGlashan v. ABS Lincs KY, Inc.*, 84 F. Supp. 3d 595, 605 (W.D. Ky. 2015) (recognizing that *Osborne* is limited to claims of NIED and IIED because the elements of those claims are more particular than the elements of a plain emotional distress claim).

The defendants correctly note that Mitchell has failed to present any evidence of an emotional injury caused by the events of July 24, 2013. During his deposition, Mitchell described seizures resulting from a car accident in 1999, and psychological treatment he has received for anxiety since he was a child. [Record No. 41, pp. 14, 21–22] Mitchell also mentioned that he has obsessive compulsive disorder and that doctors are looking into the possibility of bipolar disorder; however, he did not attribute these conditions to the officers' alleged attack. [*Id.*, p. 30] In fact, he stated that he has suffered from the first condition all his life. [*Id.*] At no point during his deposition did Mitchell describe an emotional injury resulting from the events of July 24, 2013. Nor has Mitchell pointed to medical or

psychiatric records detailing trauma or symptoms resulting from that night. Thus, he cannot assert a claim of NIED under Kentucky law. *Osborne*, 399 S.W.3d at 18.

Contrary to the defendants' argument, Lisa Fagaly describes emotional injuries potentially resulting from the events of July 24, 2013. [Record No. 39, p. 8] While she described fear resulting from prior occasions where the police came to her home and "made fun" of her, she also described fear she experienced on and after the night of the events. [Record No. 40, p. 60] For example, she explained that she ran into her home on July 24th out of fear of what the officers might do to her after allegedly beating her son. [*Id.*, p. 95] Further, she recounted the embarrassment she felt upon being arrested and "jerked" out of her house by the officers in front of her daughter and granddaughter. [*Id.*, p. 48] In addition, she stated that she did not file a complaint with the Paris Police Department because she feared what the officers might do to her after what she witnessed regarding her son. [*Id.*, p. 40–41]

Viewing all facts and inferences in favor of Lisa Fagaly, the Court concludes that she has presented evidence, however slight, of an emotional injury that could be considered serious or severe. In particular, Lisa's expressed fear of filing a complaint after the events suggests a continuing emotional injury.[2] However, the defendants correctly note that Lisa fails to present any expert or scientific evidence of her alleged emotional injuries. [Record No. 39, p. 8] While she visits a social worker for her bipolar, post-traumatic stress, and anxiety disorders, these resulted from prior domestic abuse. [Record No. 40, pp. 11–12,

---

2   The severity of Lisa Fagaly's alleged emotional injuries is questionable. Because she has not expressed how any fear or mental anguish affects her daily life, it is likely that she cannot establish a serious or severe emotional injury under Kentucky law. *Osborne*, 399 S.W.3d at 18.

16–17] Additionally, Lisa could not remember if she had a prescription for Klonopin prior to the events of July 24, 2013. [*Id.*, pp. 21–22] Because Lisa has not presented expert or scientific evidence of emotional injuries resulting from the events of the night at issue, she cannot establish a claim of NIED. *Osborne*, 399 S.W.3d at 17.

Neither plaintiff can satisfy the elements of NIED under Kentucky law. Therefore, the Court will grant summary judgment to the defendants on both plaintiffs' NIED claims. However, Count IV also addresses claims of negligence and vicarious liability due to the actions of the officers on the night at issue. To the extent that Mitchell asserts these claims against the officers for their alleged use of excessive force, the claims remain, as the defendants have not requested summary judgment on those issues.[3]

### D. The Plaintiffs' IIED/Outrage Claims (Count V)

The defendants request summary judgment in their favor on the plaintiffs' IIED claims, reasoning that the plaintiffs' claims of assault and battery allow them to recover for emotional distress. [Record No. 39, p. 9] The tort of outrage, also known as intentional infliction of emotional distress, is typically considered a "gap-filler," meaning that the tort is available where a more traditional tort would not provide an appropriate remedy. *Brewer v. Hillard*, 15 S.W.3d 1, 7–8 (Ky. Ct. App. 1999) (citing *Rigazio v. Archdiocese of Louisville*,

---

3   The Complaint rather confusingly places in the heading of Count IV, "Negligence and Vicarious Liability and Negligent Infliction of Emotional Distress," and then primarily proceeds to describe emotional distress experienced by the plaintiffs. [Record No. 1, p. 6] The Court finds that the facts in the Complaint only support a common law claim of negligence (and vicarious liability) by Mitchell, because the Complaint does not describe any negligent acts performed by the officers towards Lisa (i.e., events surrounding her arrest as described in her deposition), except for those facts relating to the NIED claim. Further, Count IV focuses on "Mitchell's injuries" but only on Lisa's "emotional distress." [*Id.*] However, even Mitchell's claim has a weak legal basis. *Ali v. City of Louisville*, No. 3:05CV-427-R, 2006 WL 2663018, *8 (W.D. Ky. Sept. 15, 2006) ("The officer is liable for the intentional tort of battery, not for negligence, when he deliberately exceeds the privileged amount of force by committing an unwarranted violence on the arrestee.").

853 S.W.2d 295, 299 (Ky. Ct. App. 1993)). The infliction of emotional distress should not be "merely the consequence of a separate compensable tort." *Cooper v. Unthank*, Nos. 2007-CA-002576-MR, 2007-CA-002596-MR, 2009 WL 3320924, *4 (Ky. Ct. App. Oct. 16, 2009). In other words, outrage applies where the contact is "intended *only* to cause extreme emotional distress in the victim." *Rigazio*, 853 S.W.2d at 299 (emphasis added). *Rigazio* applies even where only one of multiple plaintiffs claiming IIED can sustain a traditional cause of action that allows for recovery of emotional damages. *See, e.g.*, *Lee v. Hefner*, 136 F. App'x 807, 814 (6th Cir. 2005) (finding that neither the victim nor his parents could sustain claims of outrage where the victim could have pled assault and battery for the officer's actions).

In this case, more traditional state law torts apply, such as battery and assault. [Record No. 1, p. 5] Because claims of battery and assault allow Mitchell to recover for emotional damages, his claim for IIED cannot survive. *Rigazio*, 853 S.W.2d at 299. While Lisa Fagaly does not plead assault and battery, she still cannot maintain a claim of outrage under *Rigazio*. She does not allege that the officers' actions were intended "only" to cause her extreme emotional distress. *Id.* In fact, the alleged tackling, beating, and tasing suggest that the defendants primarily intended to cause physical pain to Mitchell, and that any resulting emotional harm to Lisa was only secondary. Consequently, Lisa's claim of IIED also fails. Further, even if the plaintiffs could properly plead outrage, they could not establish the elements because they have no expert or scientific evidence of serious or severe emotional distress, as explained above. *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 544 (Ky. Ct. App. 2013).

### E.      Failure-to-Train (Count VI)

To state a claim against a municipal entity such as the City of Paris, Mitchell and Lisa must show that it committed some wrong. *Doe v. Clairborne Cnty., Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) ("[R]espondeat superior is not available as a theory of recovery under section 1983."). "To establish municipal liability pursuant to § 1983, a plaintiff must allege an unconstitutional action that 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' or a 'constitutional deprivation[] visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels.'" *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)).

If the plaintiff asserts that a policy caused the constitutional violation at issue, he must identify that particular practice or policy. *Ghaster v. City of Rocky River*, No. 1:09-cv-2080, 2010 WL 2802685, at *7 (N.D. Ohio May 12, 2010). For example, in *Hutchison v. Metro. Gov't of Nashville & Davidson Cnty.*, the plaintiff merely alleged that the defendant "failed to adequately train its officers in stopping vehicles and/or ordering passengers out of those vehicles in disregard of their disabilities and injuries." 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010). However, the plaintiff did not provide any additional factual support for the allegation. *Id.* As a result, the district court dismissed the claim. *Id.* In addition to identifying a particular policy, the plaintiff must show that the "custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's

constitutional rights." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010)).

If the plaintiff instead asserts that a municipal custom of "inaction" exists, he must present evidence of: (i) a "clear and persistent pattern" of unconstitutional conduct; (ii) the municipality's "notice or constructive notice" of that conduct; (iii) its "tacit approval" of the conduct; and (iv) that the policy of inaction was the "moving force" behind the constitutional deprivation. *Doe*, 103 F.3d at 508.

The Complaint states that the City of Paris "was deliberately indifferent to its police officers' need for training about interactions with citizens who have been handcuffed and are in police custody." [Record No. 1, p. 7] This allegation is repeated twice. [*Id.*, pp. 2, 5] This bare allegation fails to withstand even the standard under a Rule 12(b)(6) motion to dismiss. Fed. R. Civ. P. 12(b)(6). As in *Hutchinson*, the plaintiff does not point to a particular policy. 685 F. Supp. 2d at 751. Even if Mitchell's allegations were sufficient, his claim does not withstand summary judgment because he has offered no *evidence* regarding Paris Police Department ("PPD") policy. Both he and his mother admitted that they have no personal knowledge of PPD procedures and training. [Record Nos. 40, p. 25; 41, p. 29]

Mitchell only attempts to present evidence of the PPD's procedures through his expert, Roger A. Clark. In the initial expert report, Clark writes,

> The PPD through its chain of command appears to have endorsed the dangerous and out-of-policy tactics that are connected to this incident. As such, their collective approval of this force and tactics puts the general public at unnecessary future risk of injury from their personnel who have been, or are now, similarly trained and/or supervised.

[Record No. 29, p. 5] However, Clark also fails to point to a particular policy or procedure that constituted a moving force behind the violation of the plaintiff's rights. He merely mentions the "chain of command" but provides no details regarding how the chain of command functions. While he refers to "collective approval" of the officers' actions, he does not explain how he arrived at this conclusion. Thus, Clark merely reiterates Mitchell's allegations and fails to identify a "deficiency in the training program" that is "closely related to the ultimate injury." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989).

To the extent that Mitchell alleges that a municipal custom of "inaction" led to the events of July 24, 2013, his claim also fails to withstand summary judgment. First, the Court assumes for the sake of analysis that Mitchell established a "clear and persistent pattern" of unconstitutional conduct by reporting that PPD officers repeatedly pulled him over without probable cause, hoping that he would "snitch" on someone. [Record No. 41, p. 68] Further, the Court accepts that Mitchell's complaint to the police chief provided the PPD with notice of that conduct.[4] [*Id.*] However, Mitchell cannot show that the City of Paris approved the conduct. In fact, Mitchell believes that the PPD "handled the situation" because the officers engaging in the allegedly unconstitutional conduct no longer "bother" Mitchell. [*Id.*, p. 70] Moreover, the plaintiff does not even allege that police inaction regarding the prior unconstitutional stops was a moving force behind the events of the night at issue. Rather, he states that the prior events do not "have anything to do with the 24th." [*Id.*, p. 68] Because Mitchell cannot succeed under either a "policy" or "inaction" theory for municipal liability

---

4   Lisa Fagaly also claims that PPD officers mistreated her by improperly arresting and handcuffing her on three or four prior occasions. [Record No. 40, p. 42] However, she did not report these events to the PPD prior to July 24, 2013, so she has not shown that the City was on notice that they had occurred.

under 42 U.S.C. § 1983, the Court will grant summary judgment in favor of the defendants on this claim (Count VI).

  F.  **Punitive Damages (Count VII with Respect to the City of Paris)**

Plaintiffs Mitchell and Lisa request an award of punitive damages against the defendants but do not specify which defendants or in what capacity. [Record No. 1, p. 7] However, in their "Request for Relief," they specify that they request compensatory damages against both the City of Paris and the officers, but that they request punitive damages only against the officers. [*Id.*] In their motion for summary judgment, the defendants contend that, to the extent that the plaintiffs request punitive damages against the City of Paris, their claims cannot stand under either federal or state law. [Record No. 39, pp. 11–12]

A municipality is immune from punitive damages under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 818 (6th Cir. 2007). A city is a municipality. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 829 (1985). Thus, the plaintiffs cannot recover punitive damages from the City of Paris under 42 U.S.C. § 1983.

Under Kentucky law, a plaintiff "shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant . . . acted toward the plaintiff with oppression, fraud or malice." K.R.S. § 411.184(2). Further, punitive damages may not be "assessed against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question." K.R.S. § 411.184(3).

"Kentucky courts applying this statute have authorized punitive damages only when the employer was aware that the employee had previously engaged in similar unacceptable behavior or when the employer condoned the wrongful action taken by the employee." *Oaks v. Wiley Sanders Truck Lines, Inc.*, No. 07-45-KSF, 2008 WL 2859021, *3 (E.D. Ky. July 22, 2008) (citing *Kentucky Farm Bureau Mutual Ins. Co. v. Troxell*, 959 S.W.2d 82, 85–86 (Ky. 1997)). Consequently, the plaintiff must present evidence that, during the agency relationship, the agent "exhibited a pattern of conduct similar to the alleged gross negligence, such that [the employer] should have reasonably expected the conduct to recur." *Jones v. Blankenship*, No. 6:06-109, 2007 WL 3400115, *4 (E.D. Ky. Nov. 13, 2007) (finding that employee's two prior collisions did not exhibit a pattern of conduct so that the employer should have anticipated the gross negligence resulting in the collision at issue).

The plaintiffs allege the existence of two patterns of conduct that may have alerted the City of Paris to police misbehavior, but these allegations do not satisfy the standard in K.R.S. § 411.184(3). First, Mitchell claims that Officers Livingood and Puckett of the PPD pulled him over on multiple occasions without probable cause. [Record No. 41, p. 68] Because neither of these officers was involved in the incident on July 24, 2013, this "pattern of conduct" is irrelevant to the present action. *See Oaks*, 2008 WL 2859021, at *3 (looking only to the particular agent's prior actions); *Kentucky Farm Bureau Mut. Ins. Co. v. Rodgers*, 179 S.W.3d 815, 820 (Ky. 2005) ("In [*Troxell*], we approved evidence of the mishandling of a prior claim in a bad faith action because it arose out of conduct by the *same claims adjuster* involved in the claim at issue; thus the insurer/employer was on notice of 'a pattern of conduct practiced by its agent.'") (emphasis added). Even if the same officers who

committed the violations at issue had committed the prior violations, the two alleged violations are not sufficiently similar. *Jones*, 2007 WL 3400115, at *4. A police department's awareness that its officers illegally pulled people over would not put the department on notice that the officers would beat and tase such individuals.

Second, Lisa contends that PPD officers engaged in a "pattern" of "targeting" her whenever she called the police about her husband's abuse.[5] [Record No. 40, p. 29–30] Specifically, she asserts that the police would generally arrest her, rather than her abusive spouse. [*Id.*] She also claims that they would jerk her around and place handcuffs on her too tightly. [*Id.*, p. 42] However, she does not know if the officers that allegedly improperly arrested and manhandled her on prior occasions were the same officers involved on July 24, 2013. [Record No. 40, pp. 38–39] Further, she did not report these incidents to the PPD prior to July 24th, nor has she presented evidence that the PPD had knowledge of the incidents and should have "reasonably expected the conduct to recur." *Jones*, 2007 WL 3400115, at *4; *see also Estate of Presley v. CCS of Conway*, No. 3:03CV-117-H, 2004 WL 1179448, *4 (W.D. Ky. May 18, 2004) (actions of an agent cannot be imputed to the principal unless the principal "actually authorizes the activity").

Finally, Clark's conclusion that the PPD "endorsed" the officers' actions on July 24th through its chain of command does not constitute *evidence* of the City's awareness or condoning of police misbehavior. [Record No. 29, p. 5] Because Mitchell and Lisa fail to present evidence that the City was aware that the three defendant-officers had previously

---

5  Because Lisa's NIED and IIED claims do not survive summary judgment, she no longer has a basis for her request for punitive damages. Thus, the Court analyzes her allegations of police misbehavior only to the extent that they are relevant for showing the PPD's alleged culpability in Mitchell's situation.

engaged in similar unacceptable conduct or that the City condoned the wrongful actions allegedly taken by the officers, summary judgment in favor of the defendants on the issue of punitive damages (Count VII) as they pertain to the City of Paris is appropriate.

**IV.**

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1. The defendants' motion for partial summary judgment [Record No. 39] is **GRANTED**, in part, with respect to the following claims and parties:

    a. Count II, in its entirety;

    b. Count V, in its entirety;

    c. Count VI, in its entirety;

    d. Count VII, as it pertains to Defendant City of Paris; and

    e. the plaintiffs' claims of negligent infliction of emotional distress in Count IV.

2. The defendants' motion for partial summary judgment [Record No. 39] is **DENIED** with respect to the remaining claims.

This 30th day of October, 2015.



Signed By:
*Danny C. Reeves* DCR
United States District Judge